UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

HARTFORD FIRE INSURANCE COMPANY,

Plaintiff,

-against-

COMBI LINE INTERNATIONAL, S.P.A.,

Defendant.

---------------------------------------------------X

07 CV 11606 (MGC)

ECF CASE

ANNE C. LEVASSEUR, having been duly sworn, deposes and states the following upon the penalties of perjury as per 28 U.S.C. § 1746:

1. I am a member admitted to the Bar of this Honorable Court and am an attorney in the firm of Lennon, Murphy & Lennon LLC, attorneys for the Defendant Combi Line International, S.P.A. ("Combi").

2. I submit this Declaration in support of Combi's Motion to Dismiss Plaintiff's Complaint.

3. Attached hereto as Exhibit 1 is a true and accurate copy of the front and back side of the Bill of Lading contract number 016112284-C dated December 17, 2006 entered into between Combi Line International, S.P.A. as carrier and Multiax International SPA as shipper.

Executed at Southport, CT this 3rd day of September, 2008.

Anne C. LeVasseur

Anne C. LeVasseur

EXHIBIT 1

EXPRESS

# BILL OF LADING ( NOT NEGOTIABLE UNLESS CONSIGNED " TO ORDER ")

COMBI LINE
Global consolidation services

Sede legale e operativa : 20090 SEGRATE (MI) – Via Cassanese 224 (Milano Oltre Palazzo Palladio)
Tel +39 02 213087.1 Fax +39 02 26926442 – e mail: info@combiline.it - p.iva 03973730967

Shipper
MULTIAX INTERNATIONAL SPA
VIA SEGALUZZA, 25
33170 PORDENONE, ITALY

Reference

Consignee ( if " To Order " so indicate )
MULTIAX CNC INC
4245 44TH ST. SE SUITE 8
GRAND RAPIDS, MI 49512, USA

Delivery of goods trough
PAN STAR EXPRESS (CHICAGO) CORPORAT
1134 TOWER LANE
BENSENVILLE
PH. FAX.

Notify party ( No claims shall attach for failure to notify )
SAME AS CNEE

RECEIVED by the Carrier the Goods as specified below in apparent good order and condition unless otherwise stated, to be transported to such place as agreed, authorised or permitted herein and subject to all the terms and conditions appearing on the front and reverse of this Bill of Lading to with the Merchant agrees by accepting this Bill of Lading any local privileges and customs notwithstanding. The particulars given below as stated by the shipper. Weight contents and value of the goods are unknown to the Carrier.

In WITNESS thereof one ( 1 ) original Bill of Lading has been signed if not otherwise stated hereafter, the same beind accomplished the other(s), if any, to the void. If required by the Carrier one (1) original Bill of Lading must be surrendered duly endorsed in exchange for the Goods or delivery order.

| Ocean vessel | Voy no. | Place of receipt | Port of loading |
|---|---|---|---|
| NORDSEA | 649W | | GENOVA |

| Port of discharge | Place of delivery | Freight payable at | Numb.of origin. B/L's | B/L No. |
|---|---|---|---|---|
| NEW YORK, U.S.A. | NEW YORK, U.S.A. | DESTINATION | 0/(NONE) | 016112284-C |

| Marks and numbers | No. of Pkgs or Shipping Units | Description of Goods ( said to contain) | Gross weight of cargo in Kilos |
|---|---|---|---|
| 1X40'OT<br>EXCU 042031/6<br>SEAL:135157<br><br>* FCL/FCL TRAFFIC | 11 PKGS | SHIPPER'S STOW LOAD AND COUNT<br>SAID TO CONTAIN<br><br>MULTIAX "T" SERIES CNC ROUTER, MODEL T 0115-3615<br>COMPLETE WITH STANDARD ACCESSORIES<br><br>FREIGHT COLLECT<br>EXPRESS BL, NO ORIGINAL REQUIRED<br><br>COPY<br><br>* FREIGHT TO BE COLLECT<br>* THC : COLLECT | 7.350,00 |

Loaded into container(s)

SEAL:

/

Excess value declaration refer to clause 6 (4) (B) + (C) on reverse side

| FREIGHT AND CHARGES | Freight Tons. | Rate (U.S. Dollars) | Per ( CBM or ton ) |
|---|---|---|---|
| | | | |

" Shipper is fully responsible for freight collect unpaid at destination "

DISBURSEMENT

" The contract evidenced by or contained in this Bill of Lading is governed by the law of Italy, and any claims or dispute arising hereunder or in connection herewith shall be determined by Courts of Italy and no other Courts "

Shipped on board the vessel

Date 17/12/2006 Signed by COMBI LINE INT'L SPA AS CARRIER

Signed on behalf of the Carrier
COMBI LINE INT'L SPA
AS CARRIER

( terms continued onback hereof )

Place and date of issue
MILAN
17/12/2006

## CONDITIONS

**1. DEFINITIONS**

Carrier means COMBI LINE INTERNATIONAL S.P.A. ITALY whose behalf this of Lading has been signed.

Merchant includes the Shipper, Holder, Consignee, Receiver of the Goods, any person owning or entitled to the possession of the Goods or of this Bill of Lading and anyone acting on behalf of any such person.

"Holder" means any person for the time being in possession of this Bill of Lading to whom the property in the Goods has passed on or by reason of the consignment of the Goods or the endorsement of this Bill of Lading or otherwise.

"Goods" means the cargo accepted from the Shipper and includes any Container not supplied by or on behalf of the Carrier.

"Container" includes any container, trailer, transportable tank, flat, or pallet or any similar article of transport used to consolidate goods.

"Carriage" means the whole of the operations and services undertaken by the Carrier in respect of the Goods.

"Combined Transport" arises when the Place of Acceptance and or the Place of Delivery are indicated on the face hereof.

"Port to Port Shipment" arises whede the Carriage called for by this Bill of Lading is not Combined Transport.

"Freight" includes all charges payable to the Carrier in accordance with the applicable Tariff.

**2. CARRIER'S TARIFF**

The terms of the Carrier's applicable Tariff are incorporated herein. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier or his agents upon request. In the case of inconsistency between this Bill of Lading and the applicable Tariff, his Bill of Lading shall prevail.

**3. WARRANTY**

The Merchant swarrants that in agreeing to the terms hereof he is, or has the authority of, the person owning or entitled to the possession of the Goods and this Bill of Lading.

**4. SUB-CONTRACTING AND INDEMNITY**

(1) The Carrier shall be entitled to sub-contract on any terms the whole or any part of the Carriage.

(2) The Merchant undertakes that no claim or allegation shall be made against any person whomsoever by whom the Carriage or any part of the Carriage is performed or undertaken (other than the Carrier) which imposes or attempts to impose upon any such person or any vessel owned by any such person any liability whatsoever in connection with the Goods whether or not arising out of negligence on the part of such person and if any such claim or allegation should nevertheless be made to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing every such person shall have the benefit of all provisions herein benefiting the Carrier as if such provisions were expressly for his benefit, and in entering into this contract, the Carrier, to the extent of these provisions, does so not only on his own behalf, but also as agent and trustee for such persons.

**5. CARRIER'S RESPONSIBILITY**

(a) Port to Port Shipment

Where the Carriage called for by this Bill of Lading is a Port to Port Shipment then

(1) the liability (if any) of the Carrier for loss of or damage to the Goods occurring from and during loading onto any sea-going vessel up to and during discharge from that vessel or from another sea-going vessel into which the Goods shall have been transhipped shall be determined in accordance with any national law making the Hague Rules or the Hague Rules as amended by the Protocol signed at Brussels on 23rd February, 1968 (Hague Visby Rules) compulsorily applicable to this Bill of Lading (including the UK Carriage of Goods by Sea Act 1924, the Australian Sea Carriage of Goods Act 1924 and the New Zealand Sea Carriage of Goods Act 1940) or if there be no such national law, in accordance with the Hague Rules contained in the International Convention for the unification of certain rules relating to Bills of Lading dated 25th August, 192. All the terms od this Bill of Ladin ((except (B) below) shall apply o such Carriage save that if any term in this Bill of Lading is inconsistent with or repugnant to the Hague Rules or the Hague Visby Rules as the case may be it shall to the extent of such inconsistency or repugnance and no further be null and void. Notwithstanding the above, the Carrier's liability, if any, shall be limited to loss of or damage to the Goods occurring from and during loading on to any sea-going vessel up to and during discharge from that vessel.

(2) for the purpose of determining the extent of the Carrier's liability for loss of or damage to the Goods, the sound value of the Goods is agreed to be the invoice value plus freight and insurance if paid

(B) Combined Transport

Where the Carriage called for by this Bill of Lading is COmbined Transport then, save as is otherwise provided in this Bill of Lading, the Carrier shall be liable for loss or damage occurring during Carriage to the extent set out below.

(1) Where the stage of Carriage where loss or damage occurred is not known

*(a) Exclusions*

Where the stage of Carriage where the loss or damage occurred is not known the Carrier shall be relieved of liability for any loss or damage is such loss or damage was caused by

(i) an act or omission of the Merchant.

(ii) insufficiency of or defective condition of packaging or marking.

(iii) handling, loading, stowage or unloading of the Goods by or on behalf of the Merchant.

(iv) inherent vice of the Goods.

(v) Strike, lock-out stoppage or restraint of labour the consequences of which the Carrier could not avoid by the exercise of ressobante diligence

(vi) a nuclear incident if the operator of a nuclear instalation or a person acting for him is liable for this damage under an applicable international convention or national law governing liability is respect of nuclear energy.

(vii) any cause or event which the Carrier could not avoid and the consequence whereof be could not prevent by the exercise of resonable diligence.

*(b) Burden of Proof*

Te burden of proving that the loss or damage was due to one or more of the causes or events specified in this sub-clause (B) (1) shall rest upon the Carrier Save that, when the Carrier establishes that in the circumstances of the case, the loss or damage could be attributed to one or more of the causes or events specified in paragraphs (a) (i), (ii) or (iv) above, it shall be presumed that it was so caused. The Mercant shall however, be entitled to prove that the loss or damage was not, in fact caused either wholly or partly by one or more of these causes or events

*(c) Amount of Compensation*

(i) Compensation shall be calculated by reference to the value of such Goods at the place and time when they are delivered to the Merchant or at the place and time when they should have been delivered.

(ii) The value of the Goods shall be determined according to the current commodity exchange price or if there is no such price according to the current market price, or if there is no commodity exchange price or current market price, by reference to the normal value of goods of the same kind and quality.

(iii) Except as provided in sub-clause (C) (2) below, compensation shall in no circumstances whatsoever and howsoever arising exceed US$2.50 per kilo of the gross weight of the goods lost or damaged

(2) Where the stage of Carriage where loss or damage occurred is known.

Notwithstanding anything provided for in sub-clause (B) (1) above and subject to Clause 14 (Deck Cargo (and Livestock), where it is known during which stage of Carriage the loss or damage occurred the liability of the Carrier in respect of such loss or damage shall be determined (a) by the provisions contained in any international convention or national law, which provisions.

(i) cannot de departed from by private contract to the detriment of the Merchant, and

(ii) would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of Carriage where the loss or damage occurred and received as evidence thereof any particular document which must be issued in order to make such International convention or national law applicable;

Provided that an international convention or national law will determine the Carrier's liability as aforesaid only if it would have been applicable if the contract referred to in (a) above were governed.

(A) where the loss or damage occurred between the time that the Goods were received by he Carrier for Carriage and the time that the Goods were loaded at the port of loading by the internal law of the state of the place of receipt or

(B) where the loss or damage occurred during carriage by sea, by the internal law of the state of the final port of discharge or

(C) where the loss or damage occurred between the time that the Goods were discharged at the final port of discharge and the time that the Goods were delivered to the Merchant, by the internal law the State of the place of delivery or

(B) where no international convention or national law would apply by virtue of (a) above, by the Hague Rules contained in the International Convention for the unification of certain rules relating to Bills of Lading dated 25th August 1924. if the loss or damage is known to have occurred at sea or on inland waterways, or

(c) by the provisions of sub-clause (B) (1) in cases where the provisions of paragraphs (a) and (b) above do not apply.

Where under the provisions of this sub-clause (B) (2) to the liability of the Carrier shall be determined by the provisions of any international convention or national law, this liability shall be determined as though the Carrier were the carrier referred to in any such convention or national law.

References in this sub-clause (B) (2) to the internal law of a state shall be deemed to exclude all principles of private international law applied by that state.

For the purposes of this sub-clause (B) (2) references in the Hague Rules to carriage by sea shall be eemed to include references to carriage by inland waterways and the Hague Rules shall be contrued accordingly.

(3) Special Privovisions for Combined Transport

*(a) Notice of loss or damage*

The Carrier shall be deemed prima facie to have delivered the Goods as described in this Bill of Lading unless notice of loss of or damage to the Goods, indicating the general nature of such loss or damage, shall have been given in writing to the Carrier or to his representative at the place of delivery before or at the time or removal of the Goods into the custody of the person entitled to delivery thereof under this Bill of Lading or if the loss or damage is not apparent within seven consecutive days thereafter.

*(b) Time-bar*

Subject of any provision of this Clause 5 to the contray the Carrier shall be discharged of all liability under this Bill of Lading unless suit is brought and notice thereof given to the Carrier within nine months after delivery of the Goods or the date when the Goods should have been delivered.

*(c) Exclusion of Limitation*

The Carrier shall not be entitled to the benefit of the limitation of ability provided for in (B) (1) (c) above if it is proved that the loss or damage resulted from an act or omission of the Carrier done with intent to cause damage or recklessly and with knowledge that damage would probably result.

(C) General (applicable to both Port to Port Shipment and Combined Transport)

(1) Delay

The Carrier does not undertake that the Goods shall arrive at the port of discharge or place of delivery at any particular time or to meet any particular market or use and save as provided in sub-clause (B) (2) above the Carrier shall in no circumstances be liable for direct indirect or consequential loss or damage caused by delay.

Where under the provisions of (B) (2) above the a Carrier is liable for delay, liability shall be limited to the element of the freight applicable to the relevant stage of transport provided this is not contrary to the international convention or national law concerned.

(2) Supply of Containers

The terms of this Bill of Lading shall govern the responsibility of the Carrier in connection with or arising out of the supply of a Container to the Merchant, whether supplied before or after the Goods are received by the Carrier for Carriage or delivered to the Merchant.

(3) Ad Valorem

Higher compensation may be claimed only when, with the consent of the Carrier, the value of the Goods declared by the Shipper, which exceeds the limits laid down in this Clause, has been stated in this Bill of Lading and extra freight paid if required. In that case the amount of the declared value shall be substituted for those limits. Any partial loss or damage shall be adjusted *pro rata* on the basis of such declared value.

(4) Hague Rules Limitation

Subject (3) above, whenever Hague Rules are applicable, otherwise than by national law, in determining the liability of the Carrier, the liability shall in no event exceed 2100 sterling per package or unit

(5) Scope of Application

Save as otherwise provided herein, the Carrier shall in no circumstances whatsoever or howsoever arising be liable for direct or indirect or consequential los od damage. The defences and limits of liability provided for in this Bill of Lading shall apply in any action against the Carrier for loss or damage or delay whether the action be founded in Contract or in Tort.

**6. SHIPPER-PACKED CONTAINERS**

If a Container has not been stowed by or on behalf of the Carrier

(a) the Carrier shall not be liable for loss of or damage to the Goods caused by.

(i) the meaner in which the Container has been stowed; or

(ii) the unsuitability of the Goods for carriage in Containers; or

(iii) the unsuitability or detective condition of the Container provided that where the Container has been provided by or on behalf of the Carrier this paragraph (a) shall only apply in the unsuitability or defective condition arose without any want of due diligence on the part of the Carrier or would have been apparent upon reasonable inspection by the merchant at or prior to the time when the Container was stowed.

(b) the Merchant shall indemnify the Carrier against any los, damage liability or expense whatsoever and howsoever arising caused by one or more of the matters referred to in paragraph (a) (i), (ii) above, save that where the loss, damage. Liability or expense was caused by a matter referred to in paragraph (a) (iii) the Merchant shall not be liable to indemnity the Carrier in respect thereof unless both the provisos referred to in that paragraph apply.

**7. INSPECTION OF GOODS**

The Carrier or any person to whom the Carrier has sub-contracted the Carriage or an person authorised by the Carrier shall be entitled but under no obligation, to open any COntainer or package at any time and to inspect the Goods.

**8. CARRIAGE AFFECTED BY CONDITION OF GOODS**

If it appears at any time that the Goods or any part thereof cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measure(s) in relation to the Container or the Goods or any part thereof, the Carrier may without notice to the Merchant take any measure(s) and, incurany reasonable additional expense to carry or to continue the Carriage thereof, and or abandon the Carriage and or store the same ashore or afloat under cover or in the open at any place, which abandonment o storage shall be deemed to constitute due delivery under this Bill of Lading The Merchant shall indemnify the Carrier against any reasobable additional expense so incurred.

**9. DESCRIPTION OF GOODS**

(1) This Bill od Lading shall be *prima facie* evidence of the receipt by the Carrier in apparent good order and condition except as otherwise noted, of the total number of COntainers, packages or other units or weight of other cargoes specified on the face thereof Proof to the contrary shall not be admissible when this Bill of Lading has been transferred to a hird party acting in good faith.

(2) Except as provided in sub-clause 9(1) above no representation's made by the Carrier as to the weight contents, measure, quantity quality, description, condition, marks, numbers or values of Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

**10. SHIPPER'S RESPONSABILTY**

(1) The Shipper warrants to the Carrier that the particulars relating to the Goods as set out ovleaf have been checked by the Shipper on receipt of this Bill of Lading and that such particulars and any other particulars furnished by or on behalf of the Shipper are correct.

(2) The Shipper shall indemnify the Carrier against all loss, damage, fines and expenses arising or resulting from inaccurancies, or inadequacy of such particulars or from any other cause in connection with the Goods for shich the Carrier is not responsible.

**11. FREIGHT AND CHARGES**

(1) Freight shall be deemed fuly earned on receipt of the Goods by the Carrier and shall be paid and non-returnable in any event.

(2) The Merchant's attention is drawn to the stipulations concerning currency in which the Freight is to be paid, rate or exchange, devaluation and other contingencies relative to Freight in the applicable Tariff.

(3) The Frieght has been calculated on the basis of particulars furnished by or on behalf of the Shipper The Carrier may at any time open any Container or other package or unit in order to reweigh, remeasure or revalue the contents, and if the particulars furnished by or obehalf of the Shipper are incorrect, it is agreed that a sum equal to either five times.

(4) Exceptasmay be provided to the contrary in the applicable Tariffa unpaid charges shall be paid without any set-off counter-claim deduction or stay of execution.

(5) Freight and liquidated damages under sub-clause 11 (3) above may be recovered by the Carrier from any person faling within the definition of Merchant in Clause I Whether or not such person is the Shipper.

**12. LIEN**

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier under this contract and for general average contributions to whomsoever due and for the cost of recovering the same and for that purpose shall have the right to sell the Goods by public auction or private treaty without notice to the Merchant.

**13. OPTIONAL STOWAGE**

(1) The Goods may be stowed in poop forecastle, deck house shelter deck, passenger space, bnker space or any covered-in space commonly used in the trade for the carriage of goods.

(2) The Goods may be stowed by the Carrier in COntainers.

(3) Goods stowed in COntainers other than flat or pallets whether by the Carrier or the Merchant, may be carried on deck or under deck withouth notice to the Merchant Such Goods (other than livestock) whether carried on dack or under deck shall participate in general average and shall be deemed to be within the definition of goods for the purposes of the Hague Rules (or where the hague Visby Rules would be applicable to the Carriage under the provisions of Clause 5 (Carrier s Responsibility) hereof for the purposes of the Hague Visby Rules).

**14. DECK CARGO (AND LIVESTOCK)**

(1) Goods (not being Goods stowed in Containers other than flats or pallets which are stated herein to be carried on deck (and livestock, whether or not carried on deck) are carried without responsibility on the part of the Carrier for loss or damage of whatsoever nature arising during Carriage by sea whether caused by unseaworthiness or negligence or any other cause whatsoever.

(2) Livestock are carried at the sole risk of the Merchant. The Carrier shall be under no liability whatsoever for any injury, illness, death, delay or destruction howsoever arising even though caused or contributed to by the act neglect or default of the Carrier or by the unseaworthiness or unfitness of any vessel, craft, conveyance. Container or other place existing at any time. In the event of the Master, in his sole discretion, considering that an livestock is likely to be injurios to the health of any other livestock or of any person on board or to cause the vessel to be delayed or impeded in the prosecution of the voyage such livestock may be destroyed and thrown overboard without any liability attaching to the Carrier. The Merchant shall indemnity the Carrier against all and any extra costs incurred for any reason whatsoever in connection ith the carriage of such livestock.

**15. METHODS AND ROUTE OF TRANSPORTATION**

(1) The Carrier may at any time and without notice to the Merchant – I. (a) use any means of transport or storage whatsoever.

(b) Transfer the Goods from one conveyance to another including transhipping or carrying the same on another vessel than that named on the face hereof or by any other means of transport whatsoever.

(c) unpack and remove Goods which have been stowed into a Container and forward the same in a Container or otherwise.

(d) proceed by any route in his discretion (whether or not the nesreet or most direct or customary or advertised route) and proceed to or stay at any place or port xhatsoever once or more often and in any order.

(e) load or unload the Goods at any place or port (wheiner or not any such port is named overleaf as the Port of Loading or Port of Discharge) and store the Goods at any such place or port.

(f) comply with any orders or recommendations given by any government or authority or any person or body acting or purporting to act as or on behalf of such government or authority or having under the terms of the insurance on the conveyance employed by the Carrier the right to give orders or directions.

(g) permit the vessel to proceed with or without pilots.

(2) The liberties set out in sub-clause (1) may be invoked by the Carrier for any purpose whatsoever whether or not connected with the Carriage of the Goods including undergoing repairs, towing or being towed, adjusting instruments, dry docking and assisting vessels in all situations. Anything done in accordance with sub-clause (1) or any delay arising therefrom shall be deemed to be within the contractual carriage and shall not be a devision.

(3) By tendering Goods for Carriage without any written request for Carriage in specialised Container or for Carriage otherwise than in a Container the Merchant accepts that the Carriage may properly be undertaken in a general purpose Container.

**16. MATTERS AFFECTING PERFORMANCE**

If at any time the Carriage is or is likely to be affected by any hidrance, risk, delay, difficulty or disadvantage of any kind (other than the inabilty of the Goofs or any part thereof safely or properly to be carried or carried further) and howsoever arising (even though the circumstances giving rise to such hindrance, risk, delay, difficulty or disadvantage existed at the time this contract was entared into or the Goods were accepted for carriage) and which cannot be avoided b the exercise of ressonable endeavours the Carrier (whether or not the Carriage is commenced) may either.

(a) Without notice to the Merchant abandon the Carriage of the GFoofs and place the Goods or any part of them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon athe responsibility of the Carrier in respect of such Goods shall casse. The Carrier shall nevertheless be antitled to full freight on Goods received for Carriage and the Merchant shall pay any additional costs of Carriage to and delivery and storage at such place or port, or

(b) without prejudice to the Carrier's right subsequently to abandon the carriage under (a), upon notice to the Merchant suspend Carriage of the Goods or any part of them and store them ashore or afloat upon the terms of this Bill of Lading, against payument of such reasobable addificnal charges as the Carrier may determine. The Carrier undertakes to use best endeavours to forward Goods, the Carriage of which has been suspended as soon as possible after the cause of hindrance, risk, delay, difficulty or disadvantage has been removed but makes no representations as to the maximum period between such removal and the forwarding of the Goods to the Place of Delivery named in hte Bill of Lading.

**17. DANGEROUS GOODS**

(1) No goods which are or may become dangerous, inflammable or damaging (including radio-active materials), or which are or may become liable to damage anu property whatsoever, shall be tendered to the carrier for Carriage without his express in writing and without the Container or other covering in which the goods are to be transported and the goods being distinctly marked on the outside so as to indicate the nature and character of any such articles and so as to comply with any applicable laws, regulations or requirements. If any such articles are delivered to the Carrier without such written consent and marking or it in the opinion of the Carrier the articles are or are liable to become of a dangerous, inflammable or demanging nature, the same may at any time be destoyed, disposed of, abandoned, or rendered harmless without compensation to the Merchant and without prejudica to the Carrier's right to Freight.

(2) the Merchant undertakes that the Goods are packed in a manner adequate to withstand the ordinary risks of Carriage having regard to their nature and in compliance with all laws or regulations which may be applicable during Carriage.

(3) Whether or not the Merchant was aware of the nature of the goods the Merchant shall indemnify the Carrier against all claims, losses damages or expenses arising in consequence of any breach of the provisions of this Clause.

4) Nothing contained in this Clause shall deprive the carrier of any of his rights otherwise provided for.

**18. REGULATIONS RELATING TO GOODS**

The Merchant shall comply with all regulations or requirements of customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses incurred or suffered by resson there of or by reason of any illegal, incorrect or insufficient marking, numbering or addressing of the Goods, and shall indemnity the Carrier in repsect thereof.

**19. NOTIFICATION AND DELIVERY**

(1) Any mention herein of parties to be notified of the arrival of the Goods is solely for informatoin of the Carrier, and failure to give such notification shall not involve the Carrier in any liability not releve the Merchant of any obligation hereunder.

(2) Where the Carriage called for by this Bill of Lading is a Port to Port Shipment the Carrier shall be at liberty to discharge the Goods or any part thereof without notice directly they come to hand at or on to any what craft or place on any day and at any time, whereupon the liability of the Carrier (in any) in respect of the Goods or that part thereof discharged as aforesaid shall wholly cease notwithstanding any custom of the port to the contrary and notwithstanding that any charges, dues or other expenses may be or become payable. If craft are used, other than at the request of the Merchant in circumstances where the Goods or that part thereof so discharged could have been discharged ashore without additional delay the Goods (or that part thereof as the case may be) shall nevertheless not be deemed to be discharged for the purposes of this Clause and of Clause 5 until they are discharged from such craft. The Merchant shall take delivery of the Goods upon discharge. All expenses inucred by reason of the Merchant s failure to take delivery of the Goods as aforesaid shall be for the Merchant's account.

(3) Where the Carriage called for by this Bill of Lading is Combined Transport the merchant shall taxe delivery of the Goods within the time provided for in the Carrier's applicable Tariff (see Clause 2)

(4) If delivery of the Goods or any part thereof is not taken by the Merchant at the time and place when and where the Carrier is entitled to call fpon the Merchant to take delivery thereof, whether he carriage is called for by this Bill of Lading is a Port to Port Shipment or Combined Transport, the Carrier shall e entitled without notice to unslow the Goods or that part thereof if stowed in Containers and/or to store the Goods or that part thereof ashore afloat. In the open or under convert at the sole risk of the Merchant Such storage shall constitute due delivery hereunder and thereupon the liability of the Carrier in respect of the Goods or that part thereof stored, storesaid (as the case may be) shall wholly cease and the cost of such storage (if paid or payable by the Carrier or any agent or sub-contractor of the Carrier) shall forth with upon demand be paid by the Merchant to the Carrier.

(5) If the Merchant fails to take delivery o' the Goods within thirty days of its becoming due under sub-clause (2) or (3) above or if in the opinion of the Carrier they are likely to deteriorate, decay become worthless or incur charges whether for storage or otherwise in excess of their value, and whether the Carriage is a Port to Port SHipment or Combined Transport, the Carrier may without prejudice to any other rights which be may have against the Merchant, without notice and without any responsibilità whasstsoever attaching to him sell or dispose of the Goods and apply the proceeds of sale in reduction of the sums due to the Carrier from the Merchant in respect of this Bill of Lading.

**20. BOTH-TO BLAME COLLISION**

If the (carrying) ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default in the navigation or the management of the carrying ship the Merchant undertakes to pay the Carrier, or where the Carrier is not the owner and in possession of the carrying ship to pay to the Carrier as trustee for the owner and/or demise charterer of the carrying ship a sum sufficient to indemnity the Carrier and/or the owner and/or demise charterer of the carrying ship against all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of or damage to or any claim whatsoever of the Merchant, paid or payable by the other or non-carrying whip or her oners to the Merchant and set-off recouped or recovered by the orther or non -carrying ship or her owners as part of their claim against the carrying ship or her owner or demise charterer or the Carrier. The foregoing provisions shall also apply where the owners operators, or those in charge or any ship or ships or objects, other than or in addition to the colliding ships or objects, are at fault in respect to a collision contact, stranding or other accident.

**21. GENERAL AVERAGE**

General average shall be adjustable to the York/Antwerp Rules of 1974 at any port or place at the option of the Carrier whether declared by the Carrier or a sub-contractor of the Carrier The Merchant shall give such cash deposit or other security as the Carrier may deem sufficient to cover the estimated general average contribution of hte Goods before delivery if the Carrier requires, or, if the Carrier does not so require within three months of the delivery of the Goods, wehter or not at the time of delivery the Merchant had notice or the Carrier lien. The Carrier shall be under no obligation to exercise any lien for general average contribution due to the Merchant.

**22. VARIATION OF THE CONTRACT, ETC.**

No servant or agent of the Carrier shall have power to waive or vary any of the terms hereof unless such waiver or variation is in writing and is specifically authoised or raified in writing by the Carrier.

**23. LAW AND JURISDICTION**

Any claim or dispute arising under this Bill of Lading shall be determined by the Courts of the country where the Carrier has its principal place of business and according to the law of those courts or at the option of the Merchant, by the Italy courts according to Italy law where the Carriage includes shipment to or from Italy and by the italy according to Italy law where the Carriage includes shipment to or form Italy.