BADIAK & WILL, LLP
Attorneys for Plaintiff
106 3rd Street
Mineola, New York  11501
(516) 877-2225
Our Ref. : 07-P-016-JK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

HARTFORD FIRE INSURANCE COMPANY
a/s/o Multiax CNC, Inc.,

                                    Plaintiff,

            - against -

COMBI LINE INTERNATIONAL, S.P.A.,

                                    Defendant.

---------------------------------------------------------------x

**ECF CASE**

**07 Civ. 11606 (MGC)**

**MEMORANDUM OF LAW IN SUPPORT OF HARTFORD FIRE INSURANCE
COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Preliminary Statement**

Plaintiff, Hartford Fire Insurance Company ("Hartford") as subrogee of Multiax

CNC, Inc., ("Multiax"), respectfully submits this memorandum of law in support of its motion for

Partial Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking

an order holding the Defendant Combi Line International, S.p.A. ("Combi"), committed a

fundamental breach of the contract of carriage depriving the defendant of reliance upon the

provisions of the contract of carriage, including any forum selection clause, as a matter of law.

## FACTS

On or before December 17, 2006, Multiax International, S.p.A, contracted with defendant Combi for the carriage of a Multiax "T" series CNC Router from the port of loading, Genova, Italy, to New York. At the time of booking, defendant Combi was told the shipment was being carried in an open-top container, which is essentially a ocean shipping container which has the roof area open for ease of loading large equipment into the shipping container. After the shipment was placed into the container a tarpaulin cover was secured to the top to protect the shipment within. As loaded, the cargo did not cause an over-height condition, that is, the machine did not extend beyond the top of the ocean shipping container. In addition, the shipper, Multiax International, S.p.A., enclosed the shipment in a heavy plastic covering to protect the machinery stowed within, including the sensitive electronic components which were part of the machine. At the time of booking, the shipper was not asked, nor was permission sought, by the defendant carrier, Combi, to permit carriage of the open top container above the weather deck of the carrying vessel. In addition, there is no custom or practice in the port of loading, Genova, Italy, which permitted carriage of an open top container on the deck of a carrying vessel. It is understood by the industry that open top containers do not afford the same degree of protection to shipments stowed within as if carried in a normal dry van ocean shipping container, the primary reason being the open top does not afford the same degree of protection to what is stowed inside as a normal hard roof would.

Thereafter, the cargo was loaded aboard the vessel NORDSEA but, contrary to the custom and understanding of the shipper, and despite having issued a clean bill of lading implying under deck stowage, the defendant Combi stowed the open top container containing the subject shipment

of machinery on deck, rather than below deck. During the course of the voyage the open top container was subjected to severe wind and seas, which caused severe damage to the tarpaulin cover and permitted seas to enter into the container. The exposure of the machinery to the seas during the voyage resulted in severe rusting damage to the majority of the machinery, despite the plastic covering provided by the shipper to the machinery. An estimate to repair the machinery, which included replacement of parts which were beyond repair, was obtained by the consignee, Multiax CNC, Inc., indicating the total cost to repair the machinery would be $195,117.31. A claim was presented by Multiax CNC, Inc., to Hartford, who insured the subject shipment under a all risk marine insurance policy, for the estimated cost to repair the damages to the subject shipment. After negotiations with it's assured, Hartford made payment to Multiax CNC, Inc., in the amount of $154,220.35 for the loss suffered to the machine during the subject voyage and Multiax CNC, Inc., in turn, executed a Subrogation Receipt in favor of Hartford which assigned all rights of recovery for the damages to Hartford.

On or about December 28, 2007, Plaintiff Hartford filed suit against Combi seeking damages in the total amount of $154,220.35, the amount paid to it's assured. On or about March 19, 2008, defendant Combi filed an answer alleging, inter alia, that the bill of lading issued by Combi contained a contractual provision stating, in effect, any claims or disputes under the bill of lading had to be determined by Courts of Italy, and no other Courts.

**ARGUMENT**

**DEFENDANT COMBI FUNDAMENTALLY BREACHED THE CONTRACT OF
CARRIAGE AND COMMITTED AN UNREASONABLE DEVIATION AS A MATTER
OF LAW**

Carriage of an open top container on deck under a clean bill of lading implying stowage below deck has been held to be a fundamental breach of the contract of ocean carriage. *See,* Ets Gustave Brunet, S.A. v. M.V. Nedlloyd Rosario, 929 F.Supp. 694 (S.D.N.Y. 1996)(where the nature of the cargo justified the reasonable expectation of the shipper that machinery shipped in open-topped containers would be stowed underdeck, on-deck stowage was an unreasonable deviation). In Ets Gustave Brunet, a shipment of machines were loaded into open-top containers which the ocean carrier loaded and stowed on deck, where they suffered corrosion and other damage, when the tarpaulin covers were badly ripped while on board the carrying vessels, as in the instant case. 929 F. Supp. at 700. The court found the damage claimed was, for the most part, caused by their exposure to sea water and salt water spray as the result of the ripping of the tarpaulins while carried on the decks of the carrying vessels. Id. The court noted the bills of lading issued by the carrier were "clean", meaning they did not specify on deck stowage, identical to the instant case. 929 F. Supp. at 704. The court also found no consent by the plaintiff cargo owner to stowage of the container on deck, 929 F. Supp at 705, nor a custom of the port of loading to permit deck stowage of open-top containers. 929 F. Supp. at 707. The court concluded that plaintiff's

expectation of below deck stowage was entirely consistent with the circumstances and to so carry

on deck constituted an unreasonable deviation, as a result of which the carrier was not entitled to

avail itself of the $500.00 package limitation.  929 F. Supp. at 709.

   More significantly, however, is that by committing an unreasonable deviation in

stowing an open-top container on deck the defendant "substantially increas[ed] the exposure of

[plaintiff's machinery] to foreseeable dangers."  General Electric Co. Int'l Sales Div. v. S.S. Nancy

Lykes, 706 F.2d 80, 86 (2nd Cir. 1983).  Absent agreement or an established custom from which

consent of the shipper for on-deck stowage may be implied, a clean bill of lading imports stowage

below deck.  Constructores Tecnicos, S. de R.I. v. Sea-Land Service, Inc., 945 F 2d 841 (5th Cir.

1991); English Electric Valve Co. v. M/V Hoegh Mallard, 814 F.2nd 84, 89 (2nd Cir. 1987).  If a

straight bill of lading is issued, as it was in this case, without notation that carriage is "on deck",

then carriage of the cargo on deck is an unreasonable deviation from the agreed-to stowage as a

matter of law.  See, e.g., St. Johns N.F. Shipping Corp., v. S.A. Companhia Geral Commercial, 263

U.S. 119(1923); The Delaware v. Oregon Iron Co., 81 U.S. 579 (1872); Ingersoll Milling Machine

Co. v. M/V Bodena, 829 F.2nd 293 (11th Cir. 1987); Thyssen Inc. v. Fortune Star, 777 F.2d 57 (2nd

Cir. 1985).

## UNREASONABLE DEVIATION BY A CARRIER OUSTS THE PROVISIONS OF THE CONTRACT OF CARRIAGE, INCLUDING ANY FORUM SELECTION CLAUSE

   As a matter of law, if a carrier deviates unreasonably from a bill of lading, it breaches

that contract of carriage and "ousts" the provisions contained therein.  See, General Electric Co.

Int'l Sales Div. v. S.S. Nancy Lykes, 706 F.2d 80, 86 (2nd Cir. 1983), *cert. denied*, 464 U.S. 849 (1984); Mobil Sales & Supply Corp. v. M.V. "Banglar Kakoli, 588 F. Supp. 1134 (S.D.N.Y. 1984); Ataei v. M.V. Barber Tonsberg, 639 F.Supp. 993, 999 (S.D.N.Y. 1986). The rationale underlying this rule is that such deviations unjustifiably exposes cargo to unanticipated and additional risks when compared to the anticipated stowage below deck, a serious or "fundamental" breach of the carriage contract. *See*, General Electric Co., supra, at 87. The legal consequence of an unreasonable deviation is to deprive the bill of lading carrier of its ability to enforce any of the contractual provisions set forth in the contract which it has fundamentally breached. Ataei v. M.V. Barber Tonsberg, 636 F. Supp. at 999. Being a fundamental breach which goes to the "very essence" of the undertaking, a carrier who commits an unreasonable deviation is deprived of reliance upon any of the provisions of the contract, as well as the provisions of COGSA. See, Admiralty and Maritime Law, Thomas J. Schoenbaum, Fourth Edition, 2004, §10-33 "Deviation and Fundamental Breach", page 713. The doctrine of deviation is based upon a voluntary action by the carrier that so changes the essence of the agreement that it is abrogated. See, Sedco, Inc. v. S.S. Strathewe, 800 F.2d 27, 32 (2nd Cir. 1986); Jones v. The Flying Clipper, 116 F.Supp. 386 (S.D.N.Y. 1953); Ashai America, Inc., v. M/V Arild Maersk, 602 F.Supp. 25 (S.D.N.Y. 1985); General Electric Co. Int'l Sales Division v. S.S. Nancy Lykes, 706 F2d 90 (2nd Cir. 1983).

Here, the very risks that would have be avoided by below deck stowage of an open-top container during a North Atlantic carriage in winter, that is, ripping of the tarpaulin cover and exposing the contents to sea spray and sea water, were caused by the defendant's decision to stow the subject container on deck without the consent, actual or implied, of the shipper. As a

consequence, in breaching its legal duty under a clean bill of lading, requiring stowage below deck, the law does not permit the defendant to avail itself of the contractual provisions of the bill of lading which it so fundamentally breached by stowing the open-top container on deck; this includes any contractual forum selection clause which the defendant would otherwise seek to enforce against plaintiff.

The forum selection clause is just one of many provisions in the defendant's bill of lading contract, and by committing an unreasonable deviation the defendant is precluded, as a matter of law, from enforcing any of the contractual provisions. See, General Electric Co., supra, at 87. Before the Court can even consider the forum selection clause, it must first determine whether there is an enforceable contract between plaintiff and defendant containing any such clause. In other words, before this Honorable Court can address the issue of enforcement of any forum selection clause, it must first determine whether the contract containing that provision is enforceable enforced by defendant against this plaintiff. The unreasonable deviation committed by having stowed the open-top container on deck, under a clean bill of lading requiring below deck stowage, ousts defendant's right to enforce any of the contractual provisions of the breached bill of lading contract, and mandates a finding by this Honorable Court that the contractual provisions, including the forum selection clause, are unavailing to this defendant as a matter of law because of the unreasonable deviation.

## CONCLUSION:

In stowing the open-top container on deck under a contract of carriage which is "clean", that is, implying an agreement for stowage below deck, without the actual or implied

consent of the shipper to on-deck stowage, the defendant has committed an unreasonable deviation as a matter of law which mandates a finding by this Honorable Court that defendant is deprived of reliance upon any of the provisions of the breached contract of carriage, including the forum selection provision, as a matter of law.

Dated: Mineola, New York
September 9, 2008

JAMES P. KRAUZLIS (JK-4972)

TO:     LENNON MURPHY & LENNON, LLC
        Attorneys for the Defendant
        COMBI LINE INTERNATIONAL
        The GrayBar Building
        420 Lexingtion Avenue, Suite 300
        New York, New York 10170

Docket No.: **07 Civ. 11606 (MGC)**

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK)
              ) SS:
COUNTY OF NASSAU )

    I, Jackie Moore, being duly sworn, deposes and says:

    I am not a party to the within action, am over 18 years of age and reside at c/o Badiak & Will, LLP, 106 Third Street, Mineola, New York, 11501-4404. **On September 9, 2008**, I served the within **NOTICE OF MOTION, AFFIRMATION OF JAMES P. KRAUZLIS, MEMORANDUM OF LAW IN SUPPORT OF HARTFORD FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT** on:

        Leonard Murphy & Leonard, LLC
        Attorney for Defendant
        Combi Line International, S.p.A.
        The GrayBar Building
        420 Lexington Avenue
        New York, New York  10170

by depositing a true copy thereof enclosed in a post-paid wrapper in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

                                      *Jackie Moore*
                                        Jackie Moore

Sworn to before me this
9th day of September, 2008.

_____
NOTARY PUBLIC
     JAMES P. KRAUZLIS
    Notary Public, State of New York
        No. 02KR5051531
     Qualified in Suffolk County
   Commission Expires Nov. 6,
          1/11/2010                        **Ref No.: 07-P-016-JK**